Lauren C. Regan, OSB #970878
Civil Liberties Defense Center
783 Grant Street, Suite 200
Eugene, OR  97402
Telephone:  (541) 687-9180
Fax: 541.804.7391
lregan@cldc.org
**LEAD ATTORNEY**

Cooper Brinson, OSB#153166
Civil Liberties Defense Center
783 Grant Street, Suite 200
Eugene, OR  97402
Telephone:  (541) 687-9180
Fax: 541.804.7391
cbrinson@cldc.org
            Of Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON
EUGENE DIVISION

| | |
|---|---|
| **ANGELO JAMES FRICANO**,<br>             Plaintiff,<br><br> v.<br><br>**LANE COUNTY** a municipal corporation**;** LANE COUNTY SHERIFF-THOMAS M. TURNER, in his individual and official capacity; CORIZON HEALTH, INC., a Delaware corporation; **LUCY KINGSLEY** in her individual and official capacity, **JACOB PLEICH,** in his individual and official capacity; **LISA NICHOLS** in her individual and official capacity; **LANE COUNTY DEPUTY SHERIFF'S REMINGTON and NABER in their individual and official capacity, and LANE COUNTY DEPUTY SHERIFF LES SIECZKOWSKI, in his/her individual and official capacity**<br>                          Defendants. | Case No. XXX<br><br>**COMPLAINT**<br><br>Civil Rights (42 U.S.C. § 1983);<br>Americans with Disabilities Act (42 U.S.C. § 12101 et seq.);<br><br>**DEMAND FOR JURY TRIAL** |

Angelo James Fricano, by and through his attorneys, CIVIL LIBERTIES DEFENSE

CENTER, for his Complaint against Defendants, states as follows:

## I. INTRODUCTION

1. This is a civil rights action arising under Title 42 of the United States Code, Sections 1983 and 1988, and the Fourth and Fourteenth Amendment to the United States Constitution, Americans with Disabilities Act, and the Rehabilitation Act brought by Mr. Fricano.

2. Mr. Fricano, a person suffering from psychosis and/or mental illness brought on by an adverse reaction to a prescribed medication, was arrested and booked in the Lane County Jail on a Director's Hold on the afternoon of June 29, 2014.  Although Lane County had contracted with Corizon Health, Inc. to provide medical services at the jail, and although Mr. Fricano was exhibiting symptoms of severe mental illness, Mr. Fricano was not reasonably medically screened nor examined by Corizon staff.  Lane County and Corizon failed to perform a reasonable medical examination, failed to consult a physician, failed to provide him with medication or treatment, and failed to transport him to a hospital.  Instead, Mr. Fricano was taken to an isolated segregation cell. On July 14, 2014, 15 days after being taken into custody, someone from the jail called for Mr. Fricano's transfer to the psychiatric hospital where he finally received necessary medical and psychiatric care and was subsequently transferred to the Veterans Administration Hospital in Roseburg, OR for continued care.  Mr. Fricano's condition was exacerbated as he decompensated rapidly in isolation and without regular food, water, a mattress, or his-prescribed medications.

3. Mr. Fricano alleges that during, and/or because of his arrest, detention, and incarceration by the above captioned defendants, Lane County, by and through Lane County Adult Corrections and Lane County Behavioral Health; as well as Lucy Kingsley, Jacob Pleich, Lisa Nichols; Lane County Deputy Sheriff Remington, Lane County Deputy Sheriff Naber,

and Lane County Deputy Sheriff Les Sieczkowski; and Corizon Health, Inc.: (a) violated Title 1983 of the Civil Rights Act, 42 U.S.C. § 1983, through violations of civil rights guaranteed by the substantive and procedural components of the U.S. Constitution; (b) Lane County, by and through Lane County Adult Corrections and Lane County Behavioral Health, and Corizon are liable for violating Title 1983 of the Civil Rights Act, 42 U.S.C. § 1983, by establishing a pattern or policy of civil rights violations, and failing to adequately train and supervise their employees, pursuant to *Monell v. Department of Social Services*, 436 U.S. 658 (1978) and *Adickes v. Kress*, 398 U.S. 144 (1970; (c) Lane County and Corizon are liable for violating the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq., and the Rehabilitation Act by discriminating against mentally ill detainees.

4. Specifically, Defendants have engaged in an ongoing practice of placing mentally ill pre-trial detainees in segregated units, leaving them in near total isolation for over 23 hours a day without providing necessary medical and mental health treatment. The use of the Lane County Adult Corrections facility as a punitive holding area for citizens experiencing serious mental or emotional disturbances is contrary to Constitutional standards and established law and policy. Moreover, such isolated conditions are well documented as contributing to the deteriorated mental health of those held in segregation. To place such vulnerable individuals in an isolated, punitive environment, rather than providing necessary evaluation, diagnosis, and treatment is nothing short of barbaric—especially when such pretrial detainees have, by definition, not been convicted of a crime and are not deemed a threat to him/herself or others.

5. Mr. Fricano was held at LCAC and the Johnson Unit at Sacred Heart Hospital pursuant to a Director's hold issued by Defendant Kingsley, a Lane County Behavioral Health Director designee.  Defendant Kingsley forcibly detained Mr. Fricano pursuant to a Director's Hold without satisfying the statutory requirements of such a hold, did not provide the required

mental health evaluation and treatment, and demanded that Mr. Fricano remain imprisoned and without necessary care until after the Oregon Country Fair that she was attending was over in order to ensure a pleasant Fair without regard for the rights of Mr. Fricano and her duties as a Director-designee.

6.  Mr. Fricano seeks compensatory damages against all Defendants, injunctive relief against Lane County, and punitive damages against individual County and Corizon Defendants, as well as attorneys' fees and costs.

## II.  JURISDICTION AND VENUE

7.  This civil action arises under the Constitution and laws of the United States, and therefore this Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a).

8.  The actions giving rise to this complaint took place in the City of Eugene, Lane County, Oregon, which is in this District; thus, venue is properly vested in this Court pursuant to 28 U.S.C. § 1391(b).

## III.PARTIES

9.  Mr. Angelo James Fricano has resided in Fall Creek, Lane County, Oregon at all times relevant to this complaint. Mr. Fricano is a married man, 17-year military veteran, and former artisan jeweler. He has no prior mental health history, nor any prior criminal convictions. At all times pertinent, Mr. Fricano was a pretrial detainee in the Lane County Adult Corrections jail.

10. Defendant Lane County is a municipal corporation, duly organized and existing under the laws of the State of Oregon.  Under its authority, the Lane County Sheriff's Department operates the Lane County Adult Corrections facility and Lane County Behavioral Health Services. At all relevant times, Defendant Lane County was responsible under state law for the acts and omissions of its employees and officials, including those whose conduct is at

issue herein. At all relevant times, Defendant Lane County, and it's agents employed at the Lane County Adult Corrections ("LCAC") were responsible for the necessary physical and mental health treatment of pretrial detainees during their confinement at its facilities.

11. Defendant Lane County has contracted with Corizon Health, Inc. to provide all necessary medical care to pretrial detainees and persons convicted of crimes held at LCAC.

12. Defendant Thomas M. Turner, at all times mentioned herein, was employed by Defendant Lane County as -Sheriff for Lane County, and was acting within the course and scope of that employment.   As Sheriff, Defendant Turner was the final policy-making official for LCAC ultimately responsible for all policies, procedures, and training at LCAC. .  He is being sued in his individual and official capacities as Sheriff for Lane County.  At all material times, Defendant Turner was a policy-making official for Defendant Lane County.

13. Defendant Lisa Nichols was at all relevant times the Community Mental Health Director for Lane County, as well as an employee or agent of Defendant Lane County, and is sued in her official capacity as such, as well as individually. Defendant Nichols failed to adequately supervise and train Community Mental Health Director Designees, failed to ensure such designees adhered to constitutional standards for the treatment and commitment of mentally ill persons and pretrial detainees, and was deliberately indifferent to the mental health needs of Mr. Fricano, and did so in her individual capacity, under color of state law, and in the course and scope of her employment with Lane County.

14. Based upon information and belief, Defendant Kingsley was at all relevant times a designee of the Community Behavioral Health Director, Defendant Lisa Nichols. Kingsley carried out the actions complained of in her individual and official capacity, under color of state law, and in the course and scope of her employment and duties as a designee of Defendant Nichols, an agent or employee of Defendant Lane County, by and through Lane County Behavioral

Health, Lane County Mental Health, and/or the Lane County Department of Health and Human Services.

15. Defendant Corizon Health, Inc., (hereinafter "Corizon")-was at all material times a Delaware corporation engaged in interstate commerce and licensed to do business in Oregon. Defendant Corizon was at all material times a Missouri corporation engaged in interstate commerce and licensed to do business in Oregon. Defendant Corizon, LLC was at all material times a Missouri corporation engage in interstate commerce. Defendant Valitas Health Services, Inc. was at all material times a Delaware corporation engaged in interstate commerce. Defendants Corizon Health, Inc., Corizon, Inc., and Corizon, LLC are wholly owned subsidiaries of Defendant Valitas Health Services, Inc. Mr. Fricano is informed and believes and thereon alleges that, at all material times, Defendants Corizon Health Inc., Corizon Inc., Corizon, LLC, and Valitas Health Services, Inc. are and were alter egos, joint venturers, and engaged in the single "Corizon" enterprise, using the same office locations, headquarters, officers, director's, website, policies, training, marketing materials, funding, and using the contracts of each of them to obtain further contracts for each of them, and shall hereinafter jointly be called "Corizon." The Corizon Defendants hold themselves out to the public as one Corizon "brand" and enterprise. The Corizon Defendants provided medical and nursing care to inmates and detainees in Lane County Adult Corrections, pursuant to contract with Lane County. On information and belief, the Corizon Defendants and their employee and agents are responsible for making and enforcing policies, procedures, and training related to the medical and mental health care of prisoners and detainees in LCAC, including: assessing inmates for possible medical or behavioral health needs; instituting appropriate assessment and treatment protocols; and communicating medical and behavioral health risks, disabilities, and needs to custodial staff, health care professionals, and outside

facilities, including to another facility in the event that LCAC cannot adequately provide for the patient's medical, behavioral, or basic care in the event the patient is unable to care for himself, including adequate hydration and nutrition.  At all times herein pertinent, Corizon was acting under color of state law.

16. Based upon information and belief, Defendant Jacob Pleich, a licensed professional counselor, was a Corizon employee or agent who at all times pertinent was a Mental Health Provider/Mental Health Specialist working at LCAC. At all times herein pertinent, defendant Pleich was acting under color of state law.  Based upon information and belief, Defendant Pleich is a citizen and resident of the State of Oregon.

17. Defendants Remington, Naber and Sieczkowski, are Lane County sheriff's deputies who at all times pertinent were working in the LCAC. At all times pertinent**,** defendants Remington, Naber and Sieczkowski were acting under color of state law. Based upon information and belief, defendants Remington, Naber and Sieczkowski were citizens and residents of the State of Oregon.

18. This complaint may be pled in the alternative pursuant to Federal Rule of Civil Procedure 8(d).

## IV. <u>GENERAL ALLEGATIONS</u>

19. Mr. Fricano is a veteran of the National Guard. He served for approximately 17 years and was honorably discharged due to medical issues pertaining to his back. Prior to the incidents described below, Mr. Fricano has no history of mental illness nor does he have any criminal record.

20. On or about June 10, 2014, Mr. Fricano was prescribed and began taking Metoprolol as prescribed by his physician, Katherine Scally of Veterans Administration, Health Clinic Eugene. Mr. Fricano's prescription for a testosterone regulator was also modified at this time.

21. On or about June 20, 2014, Mr. Fricano and his family members began to notice behaviors uncharacteristic of Mr. Fricano.

22. On or about June 28, 2014, Mr. Fricano's mother contacted Veterans Affairs, Health Administration and reported the unusual behavior and requested that the VA attempt to contact Mr. Fricano. Mr. Fricano's mother called again on June 29 at approximately 9:48AM to request that Mr. Fricano's doctor contact Mr. Fricano as she was extremely concerned about her son's mental state.

23. Mr. Fricano was a vendor at the Oregon Country Fair in Veneta, Oregon, and, on or about June 29, 2014, he arrived at the Fair claiming that he was searching for his wife and his immediate family. In the course of his frantic searching, Mr. Fricano allegedly threatened another vendor with a small t-ball bat. No one was injured during this incident. When the alleged victim left Mr. Fricano's presence, Mr. Fricano set the small bat down and sat on the back of a pick-up truck with Oregon Country Fair Security personnel.

24. On or about June 29, 2014, Mr. Fricano was arrested and charged with menacing and criminal mischief regarding the verbal altercation between himself and the fellow vendor at the Oregon Country Fair. Both charges were later dropped.

25. On June 29, 2014 Mr. Fricano was taken into custody by Lane County Sheriffs and transported to LCAC.

26. LCAC houses pretrial detainees and persons convicted of crimes. Defendant Lane County is obligated by state and federal law to provide medical and mental health care for persons lodged in the jail.

27. Commencing in the spring of 2012, Defendant Lane County, by contract, delegated to Defendant Corizon its duty to provide medical and mental health care to pretrial detainees and persons convicted of crimes lodged at LCAC. In exchange for a flat fee, Defendant

Corizon assumed all responsibility to "deliver quality medical services" to individuals incarcerated within LCAC, and further agreed to "meet all applicable federal, state and local guidelines, laws and regulations." Defendant Corizon also agreed to pay for all inmate medical services that cannot be performed in the jai, including all ambulance and hospital charges.

28. Defendant Kingsley was present at the Country Fair when the alleged incident occurred between Mr. Fricano and the fellow vendor. Either during the incident or in the immediate aftermath of the incident at the Country Fair, Defendant Kingsley, in her capacity as a Community Mental Health Director's Designee, placed Mr. Fricano on a Director's Hold pursuant to ORS 426.233. The Director's Hold required LCAC/LCSO to take Mr. Fricano into custody and "immediately remove [him] to Sacred Heart Hospital Emergency Room for an examination…."

29. Mr. Fricano was not transported to Sacred Heart, but was instead taken to LCAC and immediately placed in segregation due to "lack of history and poor behavior." The Director's hold was placed on Mr. Fricano prior to booking at LCAC.

30. Defendant Kingsley, at the time of Mr. Fricano's arrest and issuance of the Director's Hold, was also a board member of the Oregon Country Fair.

31. Defendant Kingsley, based on information and belief and contrary to established law and policy, conspired with employees, agents, and/or designees of Defendant Lane County and Corizon, as well as medical staff at the Johnson Unit, ,to keep Mr. Fricano in custody until the end of the Oregon Country Fair. Defendant Kingsley admitted to this action on July 16, 2014. Dr. James Sanchez reports that Defendant Lucy Kingsley was "quite concerned…that [Mr. Fricano] not be released until early next week to avoid the risk of his presenting back on the [Country Fair] site."

32. About two weeks prior to Mr. Fricano's arrest on June 29, 2014, Mr. Fricano began to exhibit signs of mental illness. It is now understood that Mr. Fricano's illness was due in large part to an adverse reaction to a change in medications that Mr. Fricano was prescribed in early June of 2014.

33. Reports from Mr. Fricano's family, wife, and workers at the Mental Health Hotline and Veterans Affairs indicate that, in the week prior to Mr. Fricano's arrest, Mr. Fricano was rambling, acting irrationally, erratic, and he was verbally (but not physically) aggressive. Members of Mr. Fricano's family called a number of mental health services in the week prior to his arrest in an attempt to get Mr. Fricano mental health care.

34. On or about June 29, 2014, the same day that Mr. Fricano was booked into LCAC, Mr. Fricano's mother came to LCAC to inform staff that his medication had changed recently and may be contributing to her son's mental state. Mr. Fricano's mother also informed LCAC that he has no history of mental health issues.

35. Mr. Fricano was booked into LCAC on June 29, 2014 at approximately 4:08PM and immediately placed in segregation. On or before 4:38PM, Lane County Sheriffs were made aware of the Director's Hold placed on Mr. Fricano by Defendant Kingsley. Officers were instructed to call Defendant Kingsley if Mr. Fricano was released prior to July 20, 2014.

36. On June 29, 2014 at approximately 4:28PM, LCAC staff noted receipt of a fax of the Director's Hold by Defendant Kingsley. At approximately 4:56PM, LCAC staff noted Mr. Fricano's "possible M/H [mental health] issues" and placed Mr. Fricano on precautionary suicide watch for every 30 minutes. Upon booking, Mr. Fricano weighed approximately 200 pounds. Upon release, he weighed approximately 177 pounds.

37. On June 29, 2014 at approximately 5:14PM, LCAC Mental Health Specialist Tawnya R. Hettwer noted that Mr. Fricano was "placed on Director's Hold by Lucy Kingsley of LCMH

prior to book-in." Ms. Hettwer also noted that Mr. Fricano's mood was "stable" and that Mr. Fricano was not exhibiting any "abnormal movements."

38. On June 29, 2014 Corizon staff noted the changes in Mr. Fricano's medication and acknowledged speaking with Mr. Fricano's mother regarding behavior and change in medication.

39. At approximately 9:37PM on June 29 2014, Mr. Fricano was observed banging on his cell door, yelling and, according to LCAC staff, kept "stating things that aren't making sence" (sic).

40. Upon booking, Mr. Fricano refused to speak to anyone without an attorney present. Thus, on June 29, 2014, LCAC staff claimed they were unable to perform a mental health evaluation on Mr. Fricano but noted he was "uncooperative" due to his apparent refusal to speak without an attorney present.

41. On June 30, 2014, at approximately 10:39PM, jail staff notes that Mr. Fricano "still makes bizzar (sic) comments but his overall behavior has improved."

42. On June 30, 2014 at approximately 11:36AM, Mr. Fricano was placed in a different segregation cell due to an incident that occurred earlier in the day. Throughout his incarceration, Mr. Fricano was extremely cold and shivering due to the cold. On June 30, 2014 Mr. Fricano requested additional blankets, clothing, or anything else to become warm. LCAC staff ignored all of Mr. Fricano's requests. As a result, Mr. Fricano, allegedly tore "off the entire plastic sheeting around his mattress and [used] the plastic as a sleeping bag." The mattress was taken from Mr. Fricano and he was not provided a mattress until July 12, 2014 despite his known history of back pain and injury. As a result, Mr. Fricano developed pressure sores.

43. Mr. Fricano was not scheduled for a review of his classification regarding his placement in

segregration until July 15, 2014.

44. Mr. Fricano was held in the jail until his arraignment on June 30, 2014.  At no time prior was

he medically screened.

45. On June 30, 2014, at approximately 2:00PM, according to Corizon staff member "R.W.," Mr.

Fricano was "pleasant" and "cooperative." Later, on the same day, R.W. met with Mr.

Fricano's mother who informed R.W. of her son's mental health status.

46. On June 30, 2014, at approximately 5:17PM Mr. Fricano underwent a brief mental health

evaluation by Ms. Hettwer. Mr. Fricano's mental health symptoms were noted as

"psychosis—delusional, paranoid." Mr. Fricano denied "suicidality." Mr. Fricano's recent

change in medication was noted. Additionally, "lethality" was not marked as an "active

issue." Mr. Fricano's treatment plan was marked "other: D/C—not a threat." Corizon staff

failed to develop or record anything closely resembling a treatment plan. The assessment by

Ms. Hettwer notes that an additional meeting would occur on July 1, 2014 with a Mental

Health Professional. However, there is no indication that such a meeting ever occurred.

47. On July 1, 2014, at approximately 10:03AM, Mr. Fricano was allegedly yelling and

pounding on his cell door. As a result of this behavior, LCAC informed Mr. Fricano that "he

will not be getting his walk and talk," i.e., the few minutes of time when Mr. Fricano was

permitted to leave his cell.

48. On July 1, 2014, at approximately 10:50AM, Mr. Fricano, while under a blanket, was asked

three times by LCAC staff if he wanted lunch. Mr. Fricano remained silent and LCAC staff

"took his silence as a refusal." Mr. Fricano did not receive lunch that afternoon. Later in the

evening, LCAC staff claim that Mr. Fricano refused dinner service as well. In the same log

entry, LCAC staff claim that Mr. Fricano "just stared at me, with his 'psycho eyes,' and told

me that he wouldn't 'need to eat dinner, because [he] won't be here that long."

49. On July 1, 2014 at approximately 4:10PM, the Department of Veterans Affairs VA Roseburg Healthcare System Behavioral Health Recovery & Reintegration Services faxed medical records to Defendant Pleich. This fax contained Mr. Fricano's prescription medications.

50. On July 2, 2014, at approximately 11:18AM, LCAC staff claimed that Mr. Fricano refused a meal because he apparently "refused to take the food off of the pie flap." LCAC staff maintains that he/she "gave him several chances."

51. On July 2, 2014, at approximately 2:36PM, LCAC staff reports that Mr. Fricano is "very mentally ill. He was yelling that he was Bob Marley to the investigator, and making all kinds of unusual statements." Mr. Fricano was under the impression that he would be able to see an attorney on this day. However, while Mr. Fricano was led to the attorney meeting room, he was instead met by an investigator with Lane County Public Defender Services. Mr. Fricano met with the investigator and as he was being "removed from Attorney RM.#6, [he] tried to hook his belly chains around a doorknob, to keep me from escorting him back down to seg/med, where he jumped off the bench after the restraints were removed." In an entry four minutes after the above entry, LCAC staff notes that Mr. Fricano "tried twice to bolt out of his seg cell and fought with deputies. Fricano was pepper sprayed." There is no evidence that Mr. Fricano ever attempted to fight with deputies. The entry following the above, at 3:27PM, details Mr. Fricano's attempt to leave his cell and does not note any combat or fighting on the part of Mr. Fricano. Rather, deputies dealt "several focused blows" to Mr. Fricano and pepper sprayed him. Mr. Fricano was forced to wash the pepper spray from his face, eyes, and other parts of his body using the only available water—in his toilet. Additionally, Defendants Remington, Sieczkowski, or Naber bent Mr. Fricano's fingers back after Mr. Fricano failed to remove his arms from between the wall of his cell and the door. Defendants Remington, Sieczkowski, or Naber threatened to break Mr. Fricano's fingers if he did not

comply. Mr. Fricano was injured as a result. Mr. Fricano requested and was denied medical

treatment at LCAC, and did not receive treatment until after his release from LCAC.

52. On July 2, 2014 at approximately 9:30AM, Mr. Fricano completed the remainder of the

LCAC booking procedures. Corizon staff notes that Mr. Fricano was cooperative while being

"processed by deputies" and "able to follow simple commands. Pleasant."On July 2, 2014 at

approximately 5:35PM, LCAC staff note that Mr. Fricano "could only talk in rambling spurts

of words that did not mean anything." LCAC staff continues, noting that after an

unsuccessful attempt to get Mr. Fricano to back away from the cell door, LCAC staff "took

this as a refusal on dinner" and did not give Mr. Fricano any food. As a result of this incident,

LCAC staff revoked Mr. Fricano's "dayroom privilege" on July 3, 2014.

53. On July 4, 2014, at approximately 6:28AM, LCAC staff reports that Mr. Fricano, after being

requested, refused to give back some of his "meal snacks" and "then started talking about

something unrelated that made no sense to me."

54. On July 4, 2014, at approximately 9:17AM, Mr. Fricano was allowed to take a shower and

was issued clean clothes. This appears to be the first shower and issuance of clean clothes

since Mr. Fricano was booked on June 29, 2014. LCAC staff note that Mr. Fricano again

apparently refused meal service for dinner.

55. On July 6, 2014, at approximately 6:44AM LCAC staff note that Mr. Fricano "has been

quiet, but still acts strangely." On the same day, at approximately 10:12PM, LCAC staff note

that Mr. Fricano was "up the entire shift and at times [would] stand up and start talking to

himself out loud." Staff also note that "during meal time," Mr. Fricano "sat on his bunk and

was saying he did not want to do anything to get hurt and would not pick up his meal until I

gave him permission."

56. At least twice during his confinement, Mr. Fricano attempted to flood his cell.

Page 14—COMPLAINT.

57. On July 9, 2014 at approximately 11:50AM, LCAC staff notes that Mr. Fricano had a small strip of cloth wrapped around two of his fingers. Mr. Fricano placed the cloth around his fingers after requesting medical treatment regarding pain in his finger and not receiving treatment. The cloth came from Mr. Fricano's shirt. Mr. Fricano was punished for using his cloth from his shirt to alleviate pain in his finger. Mr. Fricano received the injury to his finger on July 2, 2014 during the incident described above involving Defendants Remington, Sieczkowski, and Naber. Again, Mr. Fricano requested medical attention for his finger multiple times during his confinement. He did not receive any treatment until after his release from LCAC. As a punishment for attempting to treat himself, Mr. Fricano's "dayroom privileges" were revoked.

58. Mr. Fricano was apparently not offered any form of mental health treatment until July 9, 2016.

59. On July 12, 2014 at approximately 2:49PM, Mr. Fricano was moved to a cell with a mattress. From July 1, 2014 to July 12, 2014, Mr. Fricano was not permitted to sleep on a mattress and, as a result, developed pressure sores that were later treated after his release.

60. Mr. Fricano was held in medical segregation for approximately 15 days. He was isolated for over 23 hours each day. In some circumstances, due to Mr. Fricano's mental illness at the time, he was unable to understand the commands of Lane County, LCAC, Lane County Behavioral Health agents or employees and Corizon staff, and was subsequently punished for his inability to understand what was happening around him.

61. On July 14, 2014, Mr. Fricano was transferred to the Johnson Unit of Sacred Heart Hospital and was admitted to undergo mental health treatment, complete medical workup including bloodwork, and medication resumption. He remained there for four days. Following treatment at the Johnson Unit, Mr. Fricano was transferred to a VA Hospital in Roseburg

where he underwent additional treatment.

62. On July 16, 2014 Mr. Fricano's treating physician at the Johnson Unit, Dr. Sanchez, remarked on the insistence of Defendant Kingsley to not release Mr. Fricano until "early next week."

63. Despite defendants' knowledge of Mr. Fricano's deteriorated mental state and the Director's Hold, no treatment plan was ever formed by Corizon to address Mr. Fricano's mental health during his confinement at LCAC. Instead, the only plan appeared to be to lock, isolate, and punish Mr. Fricano until he was finally transferred to the Johnson Unit.

64. Due to his mental condition, Mr. Fricano was unable to eat sufficiently or was punished with the withholding of meals by LCAC staff.  He was also punished and not allowed to leave his cell, including to shower for 11 days.  As a result, Mr. Fricano lost approximately 23 pounds during his incarceration.  LCAC also failed to monitor his hydration.

65. As a result of the above conduct by Defendants, Mr. Fricano has prolonged mental health issues. He has been diagnosed as having severe depression and PTSD as a result of his detention at LCAC.

66. By failing to provide Mr. Fricano any kind of mental health treatment for at least ten days and leaving him in segregation for 15 days, Mr. Fricano's mental health condition severely deteriorated which resulted in a prolonged recovery that is still ongoing.

## V.  ALLEGATIONS OF SYSTEMIC DEFICIENCIES

67. At all relevant times, Defendant Lane County, by and through LCAC, and Lane County Mental Health, are responsible for training and supervising their staff to detect and respond appropriately to individuals suspected of having serious mental illness, and to train them on appropriate ways to accommodate their disabilities and communicate with them safely and

humanely. Defendants do not appear to have adequate training, resources, and supervisory programs in place regarding mentally ill citizens with whom they contact.

68. In *Mark Kemp v. Lane County, et. al.* (Case No. 10-6420-TC), LCAC was required to provide increased and adequate training for correctional staff regarding the humane and professional treatment of detainees and/or inmates suffering from mental health conditions.

69. At all relevant times, Defendants were responsible for adequately evaluating, assessing, and treating inmates, particularly pretrial detainees like Mr. Fricano, who arrive at the jail with mental health issues, in accordance with reasonable and accepted psychiatric care, treatment, and correctional practices.

70. At all relevant times, Defendants had a duty to comply with Court Orders and statutory mandates to transport pretrial detainees, like Mr. Fricano, to the Sacred Heart Hospital "immediately," when detainees suffer from serious mental illnesses and are confined in LCAC.

71. At all relevant times, Defendants had a duty to comply with Oregon laws regarding the treatment of individuals detained pursuant to a Director's Hold. Defendant Kingsley placed Mr. Fricano on a Director's Hold pursuant to ORS 426.233 and directed officers to take Mr. Fricano "into custody and immediately remove [him] to Sacred Heart Hospital Emergency Room for an examination." Defendant Kingsley, as well as other named defendants, failed to comply with the procedures required when a Director's Hold is placed on an individual. Defendants failed to comply with established policy in the following ways:

   a. If a person is taken into custody under 426.233, the person approving the Hold— in this case Defendant Kingsley—must notify the Community Mental Health program director in the county where the person is taken into custody. There is no indication that happened in this case.

b. If a person is taken into custody under 426.233, under no circumstances may a person be held for longer than five judicial days. In this case, Mr. Fricano was held for at least 15 days.

c. When a person is taken into custody under ORS 426.233, a licensed independent practitioner must examine the person immediately. If the licensed independent practitioner finds the person to be in need of emergency care or treatment for mental illness, the practitioner must either 1) approve the person for emergency care or treatment or 2) detain the person for no more than 5 days. Otherwise, the person must be released. While Defendant's acknowledged and were made abundantly aware of Mr. Fricano's mental health crisis and the Director's Hold, they ignored the health crisis and the requirements under Oregon law regarding individuals held pursuant to a Director's Hold.

d. Defendants violated ORS 426.234 by holding Mr. Fricano for longer than five days without a hearing.

e. Defendants failed to prepare an investigation report and recommend that the circuit court not proceed in the matter facing Mr. Fricano thereby violating the procedures required under ORS 426.237. Defendants also failed certify Mr. Fricano for intensive treatment thereby violating procedures required under ORS 426.237.

f. Defendant Kingsley and/or Defendant Nichols failed to recommend in an investigation report (let alone prepare an investigation report) that the circuit court hold a hearing thereby violating the procedures required under ORS 426.074.

g. In short, the Defendants failed to perform any of the duties required under Oregon law governing individuals taken into custody on a Director's Hold.

72. Upon information and belief Lane County, by and through LCAC, as well as Corizon lacked
a mental healthcare delivery system that was consistent with the minimum requirements of
the Eighth and Fourteenth Amendments to the United States Constitution. Specifically, the
mental health care system was staffed, or understaffed, by untrained or unqualified clinicians
and lacked the capacity to provide necessary treatment for those pretrial detainees who suffer
from mental illness, like Mr. Fricano.

73. Upon information and belief, Defendant Kingsley abused her position as a Community
Mental Health Director Designee and acted to prevent the due process owed to Mr. Fricano
under the 14th Amendment. Specifically, Defendant Kingsley acted to prevent the release and
treatment owed to Mr. Fricano well beyond the bounds of the U.S. Constitution and the
procedures set forth under Oregon law.

74. Upon information and belief, Defendant Nichols failed to adequately train and supervise
designees, including Defendant Kingsley,

## VI.    FEDERAL LAW CLAIMS

### A. FIRST CLAIM FOR RELIEF
### (42 U.S.C. § 1983 – Individual Liability)

75. Mr. Fricano realleges each and every paragraph in this complaint as if fully set forth here.

76. Defendants, acting under the color of state law in their individual and personal capacities,
deprived Mr. Fricano, a pretrial detainee, of the rights, privileges, and immunities secured by
the Fourth and Fourteenth Amendments to the United States Constitution by subjecting him
to—or through their deliberate indifference allowing others to subject him to—delay and
denial of access to medical or mental health care for a serious but treatable medical or mental

health condition, and denying him proper and necessary care. Mr. Fricano was exhibiting

serious mental distress including hallucinations, delusions and psychosis as a result of an

adverse reaction to newly prescribed medications at the time he was booked into the jail.

77. Mr. Fricano's mother informed LCAC staff of these facts upon her son's arrest on June 29,

2014. In fact, Mr. Fricano's doctors at the Veterans Affairs ("VA") clinic in Roseburg made

multiple contacts with LCAC and informed them that Mr. Fricano was likely having an

adverse medical reaction to newly prescribed medications, specifically Metoprolol and a

testosterone regulator.

78. Defendants knew or must have known that Mr. Fricano's medical and mental health

condition was serious but treatable, and they knew or must have known that he required

access to and delivery of urgently needed medical and mental health care. Defendants

further had a duty to provide Mr. Fricano with: reasonable security; a transfer for inpatient

psychiatric hospitalization; a transfer for inpatient medical hospitalization regarding the

adverse medication reaction, and other appropriate precautions to accommodate his serious

medical and mental health conditions, including the provision of necessary food and water as

well as necessary medical and mental health care.

79. Defendants knew or must have known that Mr. Fricano required immediate intervention,

hospitalization, and a higher level of care than was offered by defendants Corizon and Lane

County at LCAC. Defendants knew or must have known that Mr. Fricano urgently required

treatment and monitoring for his serious but treatable medical and mental health conditions,

and that pending such treatment he needed to be properly monitored to ensure his basic needs

were met and he was not abused while segregated in the LCAC. This failure seriously

aggravated his condition. Defendants knew or should have known that Mr. Fricano could not

care for himself nor advocate for his urgently needed medical and psychiatric intervention,

hospitalization, and appropriate watch protocols, and Defendants knew or must have
known—but disregarded—that Mr. Fricano required supervision in appropriate and indicated
housing, even in jail.

80. Defendants, acting under the color of law in their individual and personal capacities,
deprived Mr. Fricano of the rights, privileges, and immunities secured by the Fourth
Amendment to be free from unreasonable seizure and the Fourteenth Amendment right to
substantive due process through their deliberate indifference denying and refusing him
necessary medical and mental health care and treatment, and/or causing others to deny and/or
delay medical and mental health care and treatment.

81. These Defendants ignored, delayed, or denied Mr. Fricano's urgently needed medical and
psychiatric care and treatment; and failed to provide Mr. Fricano a psychiatric examination at
any time while in LCAC, even though he exhibited unmistakable symptoms of severe mental
illness.  As a result of these Defendants' deliberate indifference and/or callous disregard for
Mr. Fricano's need for medical care and treatment, and their disregard and indifference to
this need, Mr. Fricano suffered damages, pain and suffering, emotional distress, anxiety,
confusion, disorientation, loss of relationships, loss of his liberty, extreme mental suffering,
worry, fear of police contact, shock, insomnia, nightmares, severe depression, post traumatic
stress disorder, and deprivation of constitutional rights.

82. By the actions and omissions described above, Defendants violated 42 U.S.C. § 1983,
depriving Mr. Fricano of the following clearly established and well-settled constitutional
rights protected by the Fourth and Fourteenth Amendments to the United States Constitution:

    a.   The right to be free from an unreasonable ongoing seizure of Mr. Fricano as a
pretrial detainee as secured by the Fourth and Fourteenth Amendments;

    b.   The right to be free from deliberate indifference to Mr. Fricano's serious medical
and mental health needs while in custody as a pretrial detainee as secured by the

Fourth and Fourteenth Amendments;

c.   The right to be free from wrongful governmental interference with familial relationships, as well as the right to companionship, society, and support of each other as secured by the First and Fourteenth Amendments.

83.    Defendants subjected Mr. Fricano to their wrongful conduct, depriving Mr. Fricano of rights described herein, knowingly, maliciously, and with conscious and reckless disregard for whether the rights and safety of Mr. Fricano and others would be violated by their acts and/or omissions.

84. As a direct and proximate result of Defendants' acts and/or omissions as set forth above, Mr. Fricano sustained injuries and damages as set forth above.

85. The conduct of the individual Defendants sued in their personal capacities entitles Mr. Fricano to punitive damages and penalties allowable under 42 U.S.C. § 1983.  Mr. Fricano does not seek punitive damages against Defendant Lane County.

86. Based on previous litigation and settlement agreements against Defendant Lane County and LCAC, *Mark Kemp v. Lane County, et. al.*, US District Court of Oregon Case No. 10-6420-TC, Defendant Lane County and LCAC were aware of the substantial risk of further harm to Mr. Fricano's mental health by keeping Mr. Fricano in isolation for over 23 hours per day for at least ten consecutive days without necessary medical and mental health care, or affirmation of adequate provision of basic needs such as food, water and sanitation, as well as adequate training of correctional officers in dealing with people suffering from serious mental illness.

87. Defendants violated rights held by Mr. Fricano which were clearly established, and no reasonable person similarly situated to Defendants could have believed that such conduct was lawful or within the bounds of reasonable discretion. Defendants thus lack qualified or statutory immunity from suit or liability.

88. As a direct and proximate result of Defendants' policy and conduct, Mr. Fricano was required to seek psychiatric services and treatment for his injuries in an amount to be determined at trial, and will, in the future, be compelled to incur additional obligations for said treatments as a result of his ongoing pain and suffering.   Mr. Fricano is entitled to compensatory damages in the sum of $1,500,000.00 (One million five hundred thousand dollars).

89. The actions of Defendants were recklessly indifferent to Mr. Fricano's civil rights, and callously disregarded his safety and health, particularly in light of the prior *Kemp* litigation referenced above, and punitive damages should be awarded in the sum of $1,500,000.00 (One million five hundred thousand dollars).

90. Mr. Fricano was required to hire attorneys to represent him in this matter and is thus entitled to an award of reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

## B. SECOND CLAIM FOR RELIEF
## MUNICIPAL AND SUPERVISORY LIABILITY (*Monell* - 42 U.S.C. § 1983) AGAINST DEFENDANTS LANE COUNTY, NICHOLS, LANE COUNTY SHERIFF THOMAS M. TURNER, THE CORIZON DEFENDANTS

91.    Mr. Fricano realleges each and every paragraph in this complaint as if fully set forth here.

92.    Defendants Lane County, by and through LCAC, and Lane County Behavioral Health are liable for the actions of the individual defendants described herein, in that one or more of the following is true: The unconstitutional actions and/or omissions of Defendants Thomas M. Turner, SIECZKOWSKI, NABER, and REMINGTON, that committed excessive force or who are individually named, as well as other officers employed by or acting on behalf of the Defendants Lane County, Corizon, including Kingsley, Pleich, and Nichols on information and belief were pursuant to the following customs, policies, practices, and/or procedures of Defendants Lane County, and/or Corizon, stated in the alternative, which were directed,

encouraged, allowed, and/or ratified by policymaking officers for Lane County, and/or

Corizon:

    a.    To deny inmates access to appropriate, competent, and necessary care for serious medical and psychiatric needs, including a policy, custom or practice of providing insufficient psychiatric medical coverage for inmates at LCAC;

    b.    A policy, custom or practice of not using the on-call psychiatrist for consultation even when a new pretrial detainee is actively psychotic and obviously seriously mentally ill;

    c.    To fail to transfer patients/inmates for inpatient psychiatric and/or medical hospitalization—particularly regarding the potential need for involuntary medication due to the patient's inability to consent to medical care;

    d.    To prescribe medication, and fail to determine what other medications or interventions may be appropriate, for a patient without the patient ever being seen by a physician or other qualified health care provider;

    e.    To fail to properly classify, house and/or monitor inmates suffering from mental health disabilities;

    f.    To allow, encourage, and require unlicensed, inadequately trained and/or inadequately supervised staff to decide whether or not jail inmates receive adequate medical and/or mental health care;

    g.    A policy, custom or practice of hiring medical and nursing personnel indifferent to the psychological and medical needs of LCAC inmates;

    h.    To fail to institute appropriate training, policies, and procedures for the management of inmates suffering from serious mental illness or other disabilities;

    i.    A policy, custom or practice of not responding to corrections officers reports of inmates' need for medical or mental health examinations or treatment;

    j.    To fail to institute appropriate training, policies, and procedures to coordinate inmate assessment, placement, and care with medical and mental health services, jail physicians, jail psychiatrists and jail corrections staff, including transferring pretrial detainees to the hospital as required by ORS 426.233 (Director's Hold) or when the facility cannot adequately provide for the person's basic needs;

k.    To fail to use appropriate and generally accepted jail procedures for handling and housing mentally ill and/or emotionally disturbed persons, including, but not limited to, the standards of the National Commission on Correctional Health Care Standards for Health Services in Jails;

l.    To fail to institute, require, and enforce proper and adequate training, supervision, policies, and procedures concerning the handling of mentally ill and/or emotionally disturbed inmates;

m.    To cover-up violations of constitutional rights by any or all of the following:

    i.    by failing to properly investigate and/or evaluate complaints or incidents related to the claimed customs, polices, practices, and procedures described above in subparagraphs (a) through (l);

    ii.    by ignoring and/or failing to properly and adequately investigate and discipline unconstitutional or unlawful activity at the LCAC as described above in subparagraphs (a) through (l); and

    iii.    by allowing, tolerating, and/or encouraging deputies, jail personnel, medical and mental health personnel to: fail to file complete and accurate reports; file false reports; make false statements; intimidate, bias and/or "coach" witnesses to give false information and/or to attempt to bolster Defendants' stories; and/or obstruct or interfere with investigations of unconstitutional or unlawful conduct, by withholding and/or concealing material information;

89.    The policies of Defendants Corizon and Lane County posed a substantial risk of causing serious harm to LCAC inmates, and Defendants Corizon and Lane County were aware of this risk.

90.    Defendants Lane County and Corizon—through their administrators and policy makers including Sheriff Thomas M. Turner, and Defendant Nichols—failed to properly hire, train, instruct, monitor, supervise, evaluate, investigate, manage, and discipline Defendants Kingsley, Pleich, Remington, Sieczkowski, Naber, and other Lane County and/or Corizon personnel, with deliberate indifference to Mr. Fricano's constitutional rights, which were thereby violated as described above.

Page 25—COMPLAINT.

91.     The unconstitutional actions and/or omissions of Defendants Kingsley, Pleich, Remington, Sieczkowski, Naber, and other Lane County and/or Corizon personnel, as described above, were approved, tolerated and/or ratified by policy-making officers for Defendant Lane County and/or Corizon, including Defendants Sheriff Turner, , and Nichols.  Mr. Fricano is informed and believes, and thereupon alleges, the details of this incident have been revealed to the authorized policy makers within Lane County and/or Corizon including Defendant Sheriff Turner, Corizon supervisors, and Defendant Nichols and that such policymakers have direct knowledge of the fact that Mr. Fricano was unlawfully denied necessary care for his serious medical and mental health needs, among other rights and accommodations.  Notwithstanding this knowledge, the authorized policy makers within Lane County and/or Corizon have approved of the conduct and decisions of Defendants Kingsley, Pleich, Remington, Sieczkowski, and Naber in this matter, and have made a deliberate choice to endorse such conduct and decisions, and the basis for them, that resulted in the suffering and harm to Mr. Fricano.  By so doing, the authorized policy makers within Lane County and/or Corizon have shown affirmative agreement with each individual Defendant's actions, and have ratified the unconstitutional acts of the individual defendants.

92.     The aforementioned customs, policies, practices, and procedures, the failures to properly and adequately hire, train, instruct, monitor, supervise, evaluate, investigate, and discipline, as well as the unconstitutional orders, approvals, ratification and toleration of wrongful conduct of Defendants were a moving force and/or a proximate cause of the deprivations of Mr. Fricano's clearly established and well-settled constitutional rights in violation of 42 USC §1983, as more fully set forth above.

93.     Defendants subjected Mr. Fricano to their wrongful conduct, depriving Mr. Fricano of rights described herein, knowingly, maliciously, and with conscious and reckless disregard for

Page 26—COMPLAINT.

whether the rights and safety of Mr. Fricano and others would be violated by their acts and/or omissions and punitive damages should be awarded against Lane County and Corizon in the sum of $1,500,000.00 (One million five hundred thousand dollars).

94.    As a direct and proximate result of the unconstitutional actions, omissions, customs, policies, practices, and procedures of Defendants Lane County and/or Corizon, including Defendant Sheriff Turner, and Defendant Nichols as described above, Mr. Fricano sustained serious and permanent injuries and is entitled to damages, penalties, costs, and attorneys' fees as set forth above, and punitive damages against Corizon and Defendants Sheriff Turner,  and Defendant Nicholas in their individual capacities.

95.    The following allegation is likely to have evidentiary support after a reasonable opportunity for further investigation or discovery: Lane County, LCAC, and Lane County Mental Health have made or allowed numerous other similar incidents to occur wherein mentally ill individuals, by virtue of their mental illness, are locked in isolation for over 23 hours per day, deprived of any adequate mental health care, and engaged with staff that fail to negotiate or utilize crisis intervention training skills to reasonably communicate with a seriously mentally ill person. Lane County, LCAC, and Lane County Mental Health have a policy of incarcerating mentally ill individuals rather than providing adequate treatment, making injunctive relief necessary and appropriate.

96.    As a direct and proximate result of the actions described herein, Mr. Fricano sustained actual damages, including pain and suffering; loss of his liberty; extreme mental suffering; worry; fear of police contact; shock; anxiety; insomnia, nightmares, and severe depression and Post Traumatic Stress Disorder all to his damage in an amount to be ascertained according to proof at trial.

97.    As a direct and proximate result of the Defendants conduct, Mr. Fricano was required to

seek psychiatric services and treatment in an amount to be determined at trial, and will, in the

future, be compelled to incur additional obligations for said treatments as a result of his ongoing

pain and suffering; all to his damage in an amount to be ascertained according to proof at trial.

98.    Mr. Fricano was required to hire attorneys to represent him in this matter and is entitled

to an award of reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

### C. THIRD CAUSE OF ACTION
### (Violations of Title II of the ADA, the Rehabilitation Act, and Title III of the ADA)
### AGAINST DEFENDANTS LANE COUNTY, CORIZON

99.    Mr. Fricano realleges each and every paragraph in this complaint as if fully set forth here.

100.    Congress enacted the Americans with Disabilities Act ("ADA") upon a finding, among

other things, that "society has tended to isolate and segregate individuals with disabilities" and

that such forms of discrimination continue to be a "serious and pervasive social problem."  42

U.S.C. § 12101(a)(2).

101.    Mr. Fricano was a "qualified individual" with a mental illness, disability and medical

impairments that limited and/or substantially limited his ability to care for himself and control

his mental or physical health condition as defined under the ADA, 42 U.S.C. § 12131(2), and

Section 504 of the Rehabilitation Act ("RA") of 1973, 29 U.S.C. § 794; 28 C.F.R. 42.540(k).

102.    Defendant Lane County is a public entity under Title II of the ADA.  42 U.S.C. §

12131(1)(A).  Title II of the ADA applies generally to jail "services, programs, or activities."  42

U.S.C. § 12132.  Defendant Lane County's adult corrections facilities jail and mental-health

services therefore are covered under Title II of the ADA.  Furthermore, respondeat superior

liability applies to Title II claims.  Defendant Lane County is therefore liable under Title II of the

ADA for the unlawful acts of its private-entity agent Corizon.

103.    Mr. Fricano is informed, and believes, and thereon alleges, that Defendant Lane County

receives federal assistance and funds, and is therefore subject to the Rehabilitation Act, 29

U.S.C. § 794.  Defendant Lane County is within the mandate of the RA that no person with a disability may be "excluded from participation in, be denied benefits of, or be subjected to discrimination under any program or activity."  29 U.S.C. § 794.

104.    Under the ADA, Lane County is mandated to develop an effective, integrated, comprehensive system for the delivery of all services to persons with mental disabilities, and to ensure that the personal and civil rights of persons who are receiving services under their aegis are protected.

105.    Title III of the ADA, 42 U.S.C. §§ 12181–89, applies to private entities.  42 U.S.C. § 12181(6).  Corizon is a corporation engaged in interstate commerce, operating for-profit business establishments providing health care, 42 U.S.C. § 12181(7)(F), within the LCAC jail.  Corizon therefore operates places of public accommodation, and Corizon is subject to Title III of the ADA.

106.    Title III of the ADA provides in pertinent part that "[i]t shall be discriminatory to afford an individual or class of individuals, on the basis of a disability or disabilities of such individual or class, directly, or through contractual licensing, or other arrangements, with a good, service, facility, privilege, advantage, or accommodation that is different or separate from that provided to other individuals."  42 U.S.C. § 12182(b)(1)(A)(iii) (emphasis added).  Under Title III of the ADA, Corizon is mandated not to discriminate against any qualified individual "on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages or accommodations of any place of public accommodation."  42 U.S.C. § 12182(a).

107.    At all material times and as described herein, Mr. Fricano (1) was an individual with a disability; (2) was otherwise qualified to participate in or receive the benefit of Defendants' services, programs, or activities, including Lane County and Corizon's jail services, programs, or activities; (3) was either excluded from participation in or denied the benefits of the Lane County

and Corizon's services, programs or activities or was otherwise discriminated against by Lane

County and Corizon; and (4) such exclusion, denial of benefits or discrimination was by reason

of his disability.

108.     As described herein, Lane County and Corizon failed to reasonably accommodate Mr.

Fricano's disability in the course of jailing him and denying him medical care, causing him to

suffer greater injury in the process than other detainees or arrestees. Lane County and Corizon's

failures to accommodate Mr. Fricano's disability include but are not limited to:

    a.  causing the violation of Mr. Fricano's rights through all
customs, policies, and practices identified above;

    b.  failing to use lawful and appropriate policies, practices, and procedures for a
mentally ill and/or emotionally disturbed person under the circumstances;

    c.  failing to transfer Mr. Fricano to an inpatient psychiatric facility prior to 15 days
after his arrival;

    d.  failing to provide Mr. Fricano with competent, appropriate, and necessary
medical, mental health, and psychiatric care;

    e.  placing Mr. Fricano in isolated, segregated housing with no adequate observation
or mental health follow-up;

    f.  failing to develop an effective, integrated, comprehensive system for the delivery
of all services to persons with mental disabilities, and to ensure that the personal
and civil rights of persons who are receiving services under its aegis are
protected;

    g.  denying Mr. Fricano access to LCAC's services, programs or activities, including
mental health services, day room privileges, recreation, and exercise;

    h.  denying Mr. Fricano nutrition and hydration as punishment for behaviors caused
by serious untreated mental illness, and

    i.  other failures to provide accommodations as the evidence in this case may show.

109.     As a direct and proximate result of Lane County and/or Corizon's violations of the ADA

and RA, Mr. Fricano sustained serious and permanent injuries and is entitled to damages,

penalties, costs and attorneys' fees as set forth above.

Page 30—COMPLAINT.

110.    Mr. Fricano was required to hire attorneys to represent him in this matter and is thus

entitled to an award of reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988.


## VIII.   RELIEF REQUESTED

WHEREFORE, Mr. Fricano respectfully requests the following relief against each and every

Defendant herein, jointly and severally:

a.    Compensatory damages in an amount according to proof and which is fair, just, and reasonable, and/or as set forth above;

b.    Punitive damages under 42 U.S.C. § 1983 in an amount according to proof and which is fair, just, and reasonable (punitive damages are not sought against Lane County), and/or as set forth above;

c.    All other damages, penalties, costs, interest, and attorneys' fees as allowed by 42 U.S.C. §§ 1983, 1988, and 12205 and Title II and Title III of the ADA, 29 U.S.C. §§ 794 and 794a; and as otherwise may be allowed by federal law;

d.    Declaratory and injunctive relief, including but not limited to, the following:

   i.    An order requiring Lane County and Corizon to institute and enforce appropriate and lawful policies and procedures for handling mentally ill and/or emotionally disturbed persons, and/or persons with serious medical needs, including the provision for timely hospital transfers;

   ii.    An order requiring Lane County and Corizon to have Registered Nurses or physicians perform intake medical assessments, or provide direct clinical supervision (by and RN or physician) of any other Nurse or staff person performing intake medical assessments;

   iii.    An order requiring Defendant Lane County and/or Corizon to comply with any court orders to transport inmates to Sacred Heart Hospital within 48 hours;

   iv.    An order requiring Lane County to institute and enforce appropriate and lawful policies and procedures for the administration of Director's holds pursuant to ORS 426.232;

   v.    An order prohibiting Lane County and Corizon from placing nonthreatening, nonviolent mentally ill and/or emotionally disturbed persons, and/or persons with serious medical needs into

segregated, isolated cells;

vi.     An order requiring Lane County and/or Corizon to provide inmates with known medical prescriptions in a timely manner

vii.    An order prohibiting Lane County and Corizon from engaging in unconstitutional customs, policies, and practices as proven in this case;

viii.   An order prohibiting Lane County and Corizon and their agents and employees from engaging in the "code of silence" as may be supported by the evidence in this case;

ix.     An order requiring Lane County and Corizon to train all sheriff's deputies and medical staff concerning generally accepted and proper tactics and procedures for the handling of mentally ill and/or emotionally disturbed persons, suicidal persons, and persons with serious medical needs and this Court's order concerning the issues raised in injunctive relief requests i–vii, above.

x.      An order to prevent LCAC and Corizon from automatically placing and indefinitely holding mentally ill pretrial detainees in segregation, especially when mental health professionals have determined that such detainees are not a threat to themselves or others; and

xi.     Such other and further relief as this Court may deem appropriate.

## JURY DEMAND

Mr. Fricano hereby demands a jury trial in this action.

DATED: June 29, 2016

CIVIL LIBERTIES DEFENSE CENTER

__/s/ Lauren C. Regan_____

Lauren C. Regan (OSB # 970878)
(541) 687-9180
Fax: 541.804.7391
lregan@cldc.org
Of Attorneys for Plaintiff